IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-619

 Filed: 18 August 2020

Orange County, No. 16 JA 61

IN THE MATTER OF: I.K.

 Appeal by respondents from order entered 22 March 2019 by Judge Samantha

Cabe in Orange County District Court. Heard in the Court of Appeals 27 May 2020.

 Stephenson & Fleming, LLP, by Deana K. Fleming, for petitioner-appellee
 Orange County Department of Social Services.

 Batch, Poore & Williams, PC, by Sydney Batch, for respondent-appellant
 mother.

 Vitrano Law Offices, PLLC, by Sean P. Vitrano, for respondent-appellant
 father.

 Parker Poe Adams & Bernstein L.L.P., by R. Bruce Thompson II, for Guardian
 ad Litem.

 ARROWOOD, Judge.

 Respondent parents appeal from the trial court’s Permanency Planning Order

establishing a permanent plan of placement for their daughter. For the following

reasons, we affirm.

 I. Background

 This appeal comes after multiple prior proceedings: a 7 November 2017

Permanency Planning Order regarding minor children I.K. (“Iliana”) and K.M.
 IN RE: I.K

 Opinion of the Court

(“Kevin”),1 which ceased reunification efforts between the children and respondents—

respondent-mother (“Patty”) and respondent-father (“Isaac”) (together

“respondents”)—and awarded guardianship of both children to their maternal

grandmother; a 7 August 2018 opinion from this Court vacating the

7 November 2017 Permanency Planning Order and remanding for further findings to

address Respondents’ fitness, whether they acted inconsistently with their

constitutionally protected status, and why reunification efforts should cease as to

Iliana and Kevin; and a 22 March 2019 Permanency Planning Order (“the Order”).

Respondents timely appeal the Order as to Iliana.

 The background of this case is partially incorporated from the text of our

7 August 2018 opinion, which vacated the 7 November 2017 Permanency Planning

Order.

 Iliana was born to Respondents in December 2012. On
 10 November 2014, the Rockingham County Department
 of Social Services received a report that Respondents lived
 in a “hoarder home” that was unsafe, Respondents sold
 their food stamps, Kevin was small for his age, there was
 fighting in the home, and Respondents were smoking
 marijuana and snorting Percocet. The Rockingham County
 Department of Social Services investigated this report, but
 no services were recommended at the time.

 In 2015, the Orange County Department of Social Services
 (“DSS”) received two reports alleging that Patty had
 snorted pills while Kevin was in the home, and that Patty
 and her brother were involved in a domestic dispute that

 1 Pseudonyms are used throughout this opinion to protect the identity of juveniles and for the
ease of reading.

 -2-
 IN RE: I.K

 Opinion of the Court

 resulted in the brother shaking and hitting Kevin. At that
 point, Respondents were provided in-home services to
 address concerns of substance use, mental health, and
 domestic violence. On 8 January 2016, Patty was
 sentenced to 45 days in jail for shoplifting and violating her
 probation. Patty received another 45 day[s in jail] in April
 2016 after [she tested positive for cocaine during her
 probation]. At that time, Respondents placed Iliana with
 the maternal grandmother[,] . . . [with whom] Kevin had
 been residing [for the previous five years]. On
 5 August 2016, Patty informed a DSS employee that [she
 and Isaac] were being evicted from their home and were
 homeless.

 Due to concerns regarding Respondents’ unstable housing,
 substance abuse, and lack of engagement in substance
 abuse treatment services, DSS filed juvenile petitions on
 10 August 2016 alleging that Kevin and Iliana were
 neglected and dependent juveniles. DSS obtained
 nonsecure custody that same day. Following a
 15 September 2016 hearing, the trial court entered an
 order on 13 October 2016 adjudicating the juveniles
 dependent, keeping temporary legal and physical custody
 with the maternal grandmother. The order required
 Respondents to submit to random drug screens, seek
 substance abuse treatment services, and follow any
 treatment recommendations. After a permanency
 planning hearing on 2 March 2017, the trial court entered
 an order on 27 March 2017 establishing a primary
 permanent plan of guardianship with the maternal
 grandmother and a secondary plan of reunification with
 Respondents. Following a 5 October 2017 permanency
 planning hearing, the trial court entered a
 7 November 2017 order ceasing reunification efforts and
 awarding guardianship of the children to the maternal
 grandmother. Respondents timely appealed the
 7 November 2017 order.

In re I.K., K.M., 260 N.C. App. 547, 548-49, 818 S.E.2d 359, 361 (2018). Our

7 August 2018 opinion vacated and remanded the trial court’s 7 November 2017

 -3-
 IN RE: I.K

 Opinion of the Court

Order for the reasons stated therein and required the trial court to “make the

required finding that Respondents were unfit or had acted inconsistently with their

constitutionally protected status as parents . . . in [order to apply] the best interest of

the child test to determine that guardianship with the maternal grandmother was in

the children’s best interests.” Id. at 555, 818 S.E.2d at 365.

 On 2 November 2018, the trial court again awarded guardianship of Kevin to

the maternal grandmother, and respondents did not appeal. That same day, the trial

court continued the permanency planning hearing as to Iliana. The trial court

conducted a permanency planning hearing on 3 January 2019 and 18 January 2019,

in which it heard further testimony from DSS employees, the maternal grandmother,

and respondents. On 22 March 2019, the trial court entered the present order finding

respondents had acted inconsistently with their constitutionally protected right to

parent Iliana, and again awarding guardianship of Iliana to her maternal

grandmother.

 II. Discussion

 Respondents argue that the trial court erred in the Order by: (a) finding that

respondents acted inconsistently with their constitutionally protected right to parent

Iliana, where such a finding was not supported by clear and convincing evidence; (b)

making various findings and conclusions of law required by statute that were not

supported by competent evidence; (c) making erroneous findings and conclusions of

 -4-
 IN RE: I.K

 Opinion of the Court

law that did not support its award of guardianship to Iliana’s maternal grandmother

under N.C. Gen. Stat. §§ 7B-906.1, -906.2 (2019); and (d) failing to provide

respondents with notice of their right to file a motion to review the visitation plan

with the trial court pursuant to N.C. Gen. Stat. § 7B-905.1(d) (2019). For the

following reasons, we find no merit to respondents’ arguments and affirm the Order.

 A. Conduct Inconsistent with Constitutionally Protected Parental Status

 Respondents argue that clear and convincing evidence did not support the trial

court’s relevant findings and conclusion of law that they had acted inconsistently with

their constitutionally protected right to parent Iliana, and the trial court accordingly

erred by proceeding to place Iliana’s best interest at the forefront of its decision. We

disagree.

 Respondents correctly note that a higher evidentiary standard applies to the

present circumstances where the trial court has ordered custody with someone other

than a child’s natural parent as the permanent plan and concluded concurrent

planning involving reunification with the child’s parents. In re B.G., 197 N.C. App.

570, 574-75, 677 S.E.2d 549, 552-53 (2009).

 A natural parent’s constitutionally protected paramount
 interest in the companionship, custody, care, and control of
 his or her child is a counterpart of the parental
 responsibilities the parent has assumed and is based on a
 presumption that he or she will act in the best interest of
 the child. Therefore, the parent may no longer enjoy a
 paramount status if his or her conduct is inconsistent with
 this presumption or if he or she fails to shoulder the

 -5-
 IN RE: I.K

 Opinion of the Court

 responsibilities that are attendant to rearing a child. If a
 natural parent’s conduct has not been inconsistent with his
 or her constitutionally protected status, application of the
 “best interest of the child” standard in a custody dispute
 with a nonparent would offend the Due Process Clause.
 However, conduct inconsistent with the parent’s protected
 status, which need not rise to the statutory level
 warranting termination of parental rights, would result in
 application of the “best interest of the child” test without
 offending the Due Process Clause. Unfitness, neglect, and
 abandonment clearly constitute conduct inconsistent with
 the protected status parents may enjoy. Other types of
 conduct, which must be viewed on a case-by-case basis, can
 also rise to this level so as to be inconsistent with the
 protected status of natural parents. Where such conduct is
 properly found by the trier of fact, based on evidence in the
 record, custody should be determined by the “best interest
 of the child” test mandated by statute.

Price v. Howard, 346 N.C. 68, 79, 484 S.E.2d 528, 534-35 (1997) (internal citations

omitted).

 “There is no bright line beyond which a parent’s conduct amounts to action

inconsistent with the parent’s constitutionally protected paramount status. Our

Supreme Court has emphasized the fact-sensitive nature of the inquiry, as well as

the need to examine each parent’s circumstances on a case-by-case basis. The court

must consider both the legal parent’s conduct and his or her intentions vis-à-vis the

child.” In re A.C., 247 N.C. App. 528, 536, 786 S.E.2d 728, 735 (2016) (alterations,

internal quotations marks and citations omitted).

 Analyzing the totality of the circumstances noted in the Order’s findings of

fact, for the following reasons we hold that the trial court did not err in determining

 -6-
 IN RE: I.K

 Opinion of the Court

that respondents acted inconsistently with their constitutionally protected status as

Iliana’s parents.

 1. Findings of Fact

 In our review of a trial court’s findings relevant to its determination that a

parent has acted inconsistently with his constitutionally protected status, “[t]he Due

Process Clause . . . requires that [such findings] must be supported by clear and

convincing evidence.” Id. at 533, 786 S.E.2d at 733 (footnote and citation omitted).

“The clear and convincing standard requires evidence that should fully convince. This

burden is more exacting than the preponderance of the evidence standard generally

applied in civil cases, but less than the beyond a reasonable doubt standard applied

in criminal matters. Our inquiry as a reviewing court is whether the evidence

presented is such that a fact-finder applying that evidentiary standard could

reasonably find the fact in question.” Id. at 533, 786 S.E.2d at 734 (alterations,

internal quotation marks, and citations omitted).

 In their separate briefs, respondents argue that numerous findings of fact in

the Order are not supported by clear and convincing evidence. These findings relate

to the court’s belief that respondents’ historic issues with unsuitable housing,

domestic violence, and substance abuse which caused Iliana to be placed with her

maternal grandmother still persisted and impeded Iliana’s ability to safely return to

their parental care.

 -7-
 IN RE: I.K

 Opinion of the Court

 For example, the trial court found that “[b]oth [respondents] have acted

inconsistently with their constitutionally-protected right to parent the minor child.”

In support of this finding, the trial court made specific findings regarding the

respondents’ voluntary placement of Iliana with her maternal grandmother due to

“[Patty]’s impending incarceration and [Isaac]’s lack of suitable housing and work

schedule,” the remaining absence of “safe and stable housing appropriate for [Iliana]

in the three (3) years the juvenile has been out of their custody,” and the respondents’

continued acts of domestic violence and illegal drug use. Our analysis focuses on

whether clear and convincing evidence was presented to the trial court on the issues

of housing, domestic violence, and drug use.

 a. Housing

 Respondents challenge the trial court’s findings to the effect that respondents

failed to rectify their housing situation to an extent that Iliana could return to live

with them. In particular, the trial court found the following: “the home in which

[respondents] were living . . . was deemed not suitable for [Iliana] when RCDSS

visited the home in the spring of 2018 and again on 12/12/2018”; “the issues of . . .

safe . . . housing are still present”; “[respondents] continue to reside with their infant

daughter and [Iliana’s] paternal grandmother . . . in a two-bedroom single wide

trailer that has holes in the floor that were recently covered with plywood . . . and

that has not otherwise been maintained”; “the housing conditions of [respondents] . . .

 -8-
 IN RE: I.K

 Opinion of the Court

was not safe and appropriate for [Iliana]. Any improvements made between the

beginning of th[e] hearing and its conclusion are not indicative of the day-to-day

condition of the home”; “[respondents] continue to reside . . . [in a] home [that] is not

appropriate at this time for placement of [Iliana]”; and “[respondents] are not making

adequate progress [and] . . . have not resolved the issues of . . . instable housing that

led to removal of custody.”

 Ample evidence supported the trial court’s findings that the cluttered,

crowded, dilapidated single-wide trailer in which respondents resided with their

newborn and Isaac’s mother was an unsafe and unsuitable place for Iliana to dwell.

Jordan Houchins (“Mr. Houchins”), an investigator with Rockingham County Child

Protective Services, testified that in the spring of 2018 he visited the trailer and

observed clutter “piled up literally to the ceiling”, and opined “that [he] would

consider [this] a hoarding situation[.]” Mr. Houchins also observed structural issues

with the floors of the small trailer. When Mr. Houchins visited the trailer again in

December 2018, the same issues remained. Isaac’s mother told Mr. Houchins a child

could sleep on the pull-out couch in the living room if Iliana lived in the trailer, as a

child already lived in the trailer with respondents and Isaac’s mother. Mr. Houchins

testified, consistent with the Adjudication Court Report, that he had concern about

young children living in a small trailer in that condition. Mr. Houchins noted that a

child currently resided at the trailer, but expressed concern with another child

 -9-
 IN RE: I.K

 Opinion of the Court

coming to live at the trailer, in light of the trailer’s size, clutter, condition of the floors,

and Isaac’s mother’s health and mobility difficulties.

 Citing only photographs taken during the proceedings on 3 January 2019

showing a slight improvement in the clutter and reinforced plywood flooring,

respondents would have us contravene the trial court’s finding that “the day-to-day

condition of the home” was presently unsafe. Such a contravention would be an

improper usurpation of the trial court’s credibility judgment between conflicting

evidence. These pictures alone, taken after initiation of the instant proceedings once

it became apparent that unsafe housing was an area of concern for the trial court, are

insufficient to override the court’s credibility assessment of the evidence before it

concerning the safety and suitability of respondents’ current housing situation. The

trial court expressly found the reports and testimony presented by the guardian ad

litem and social workers assigned to the case more credible than respondents’

representations as to recent improvements in the condition of the trailer.

 “In a nonjury trial, it is the duty of the trial judge to consider and weigh all of

the competent evidence, and to determine the credibility of the witnesses and the

weight to be given their testimony. If different inferences may be drawn from the

evidence, the trial judge must determine which inferences shall be drawn and which

shall be rejected.” In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365-66

(2000) (internal citations omitted). A trial court’s credibility assessments are no basis

 - 10 -
 IN RE: I.K

 Opinion of the Court

for relief on appeal in child protection proceedings or otherwise. See In re A.C., 247

N.C. App. at 550 n.8, 786 S.E.2d at 743 n.8 (citation omitted). Here, the trial court

acted within its discretion in finding the testimony and reports of the guardian ad

litem and social workers who had visited the home more credible on the issue of the

trailer’s current condition than a few photographs taken during the proceedings.

 While we may presume that respondents will not remove the reinforced

plywood flooring at the termination of these proceedings, the trial court possessed

clear and convincing evidence that the remaining issues identified with the trailer

related to clutter, living space, and other structural issues remained impediments to

Iliana’s safe placement within the dwelling. When coupled with the trial court’s

uncontested finding that “[r]espondent parents indicate they plan to reside with [the

paternal grandmother] in the future despite the ongoing concerns about the safety

and appropriateness of the condition of the home[,]” the trial court appropriately

found that respondents’ failure to furnish safe and suitable housing for Iliana bore

upon whether their conduct was inconsistent with their constitutionally protected

parental rights.

 b. Domestic Violence

 Respondents also challenge the Order’s findings to the effect that respondents

have failed to rectify their issues with domestic violence to an extent that Iliana could

return to live with them. In particular, the trial court found the following:

 - 11 -
 IN RE: I.K

 Opinion of the Court

“[respondents] continue to engage in domestic violence . . . despite their completion

of treatment and classes”; “the issues of . . . domestic violence . . . are still present

despite numerous services that have been offered to the family”; “[t]here has not been

another identified domestic violence incident between Respondent parents, however

there has been domestic violence in the home between [Isaac] and his mother”; “[t]he

issues that led to removal of custody, to wit, . . . domestic violence, . . . have not been

resolved.”

 These findings of fact are erroneous as to Patty. The trial court considered

evidence that she regularly participated in counseling regarding domestic violence

and had not been involved in a domestic violence incident with Isaac since October of

2016. There was no other evidence indicating Patty’s past issues with domestic

violence persisted.

 However, these findings of fact are supported by clear and convincing evidence

as to Isaac. The trial court’s remaining unchallenged findings of fact establishing

respondents’ extensive history of domestic violence issues, when coupled with

evidence of the most recent domestic disturbance Isaac had with his mother in the

same trailer in which he wishes Iliana to reside, support its ultimate finding that he

has not resolved his issues with domestic violence to an extent necessary to safely

place Iliana in his custody.

 - 12 -
 IN RE: I.K

 Opinion of the Court

 Emily Wise (“Ms. Wise”), the DSS “assigned social worker for [Iliana],” testified

concerning the respondents’ extensive history of domestic violence, which she also

detailed in the Adjudication Court Report. In particular, Isaac was convicted of

misdemeanor assault on a female as a result of an incident between Patty and him

in October 2016.

 The Order mischaracterizes the most recent domestic incident as one involving

actual physical violence. In fact, the evidence shows that police were called to the

residence on 23 August 2018 to respond to reports of a loud verbal disagreement.

However, the OCDSS report characterizes the incident as more than just a simple

argument. Rather, Isaac was reportedly being “verbally aggressive . . . and was

‘tearing up’ the [trailer].” This evidence certainly does not refute the court’s

continuing concern.

 While a trial court may not solely “rely on prior events to find [facts relevant

to the current state of matters in issue at a permanency planning hearing], it may

certainly consider facts at issue in light of prior events.” In re A.C., 247 N.C. App. at

535, 786 S.E.2d at 735 (citing Cantrell v. Wishon, 141 N.C. App. 340, 344, 540 S.E.2d

804, 806-807 (2000) (“[T]he trial court erroneously placed no emphasis on the

mother’s past behavior, however inconsistent with her rights and responsibilities as

a parent[;] . . . failed to consider the long-term relationship between the mother and

her children; . . . and failed to make findings on the mother’s role in building the

 - 13 -
 IN RE: I.K

 Opinion of the Court

relationship between her children and the [nonparent custodians].”)). In light of the

trial court’s detailed, unchallenged findings establishing Isaac’s extensive history of

domestic violence and reluctance to complete perpetrator programs except as

mandated by the court, the trial court acted within its discretion in characterizing

his most recent outburst as an indication that his issues with domestic violence have

not been resolved to the extent necessary to place Iliana in his care.

 c. Substance Abuse

 Finally, respondents challenge the trial court’s findings to the effect that

respondents have failed to rectify their issues with substance abuse to an extent that

Iliana could return to live with them. In particular, the trial court found the

following: “[respondents] continue to engage in . . . illegal drug use despite their

completion of treatment and classes”; “the issues of substance use . . . and safe,

substance-free housing are still present despite numerous services that have been

offered to the family”; “[respondents] continue to use marijuana despite substance

abuse treatment. [Patty] has sought prescription painkillers from her mother on

more than one occasion while [Iliana] has been placed out of the home”; and

“[respondents] are not making adequate progress . . . [and] have not resolved the

issue[] of substance abuse . . . that led to removal of custody.”

 Clear and convincing evidence supported these findings of fact as to both

respondents. The trial court considered evidence that respondents completed

 - 14 -
 IN RE: I.K

 Opinion of the Court

substance abuse treatment on 16 March 2018. Respondents provided hair follicles

for a drug screen, and the screen of both respondents on 4 September 2018 indicated

marijuana use. The trial court was also presented with evidence of Patty’s continued

drug seeking behavior after the 7 November 2017 Permanency Planning Order.

 Ms. Wise testified that Patty had engaged in drug seeking behavior after the

appeal and remand of the 7 November 2017 Order. Specifically, Patty texted “her

mother . . . requesting pain medications on several occasions,” including a text

message asking “Do you have a couple of pills I can get?” on 10 June 2018, as well as

a text message on 10 August 2018 requesting pain medication. Patty’s drug seeking

behavior is supportive of the trial court’s findings of Patty’s continued drug use.

 The trial court heard evidence that Isaac completed his substance abuse

treatment program in March of 2018 and has since tested positive for marijuana on

the same day as Patty and exchanged text messages with her seeking to purchase

marijuana. Therefore the court had clear and convincing evidence before it that,

viewed in light of Isaac’s extensive history of substance abuse recognized by the

majority, there was legitimate cause to question whether he had overcome this

problem such that Iliana could be safely placed within his home. The trial court also

found that he intended to continue residing indefinitely with Patty, who continues to

exhibit drug-seeking behavior, in the very trailer where they were previously known

to snort pills and consume other impairing substances together in front of their

 - 15 -
 IN RE: I.K

 Opinion of the Court

children. We therefore uphold the trial court’s findings of fact to the effect that

respondents have not overcome their substance abuse issues to its satisfaction in

deciding whether placement of Iliana in their home would be appropriate.

 2. Conclusion of Law

 The order’s aforementioned findings of fact support the trial court’s conclusion

of law that respondents’ conduct was inconsistent with their constitutionally

protected right to parent Iliana. Clear and convincing evidence supported the Order’s

findings that recent incidents raised serious concerns about their progress in

resolving their chronic issues related to unsafe housing, domestic violence, and

substance abuse that had precipitated the circumstances in which Iliana was

adjudicated dependent and placed with her maternal grandmother in 2014. When

considered in light of the order’s undisputed findings establishing respondents’

extensive history as to each of these chronic issues and their detrimental effect on

Iliana, we uphold the trial court’s determination that the totality of circumstances

relevant to their conduct was inconsistent with their constitutionally protected status

as Iliana’s parents. Having overcome this constitutional threshold, the trial court

appropriately placed Iliana’s best interest at the forefront of its decision to grant

guardianship to her grandmother as the permanent plan.

 B. Analysis Under the Statutory Standard for Permanency Planning

 - 16 -
 IN RE: I.K

 Opinion of the Court

 Respondents make the same evidentiary challenges to the trial court’s findings

of fact in arguing that they fail to satisfy the statutory requirements applicable to an

order granting guardianship to a nonparent as the permanent plan over a parent’s

objections. In essence, they contend that competent evidence does not support the

trial court’s findings that they have failed to resolve the issues of domestic violence,

substance abuse, and instable housing that lead to Iliana’s placement with her

grandmother three years prior. Having already determined that these findings of

fact clear the higher constitutional bar imposed by the Due Process Clause, we hold

that the trial court heard competent evidence to support these findings.

 In turn, these findings support the statutorily required ultimate findings of

fact and the order’s conclusions of law with which respondents take issue. “In

choosing an appropriate permanent plan under N.C. Gen. Stat. § 7B-906.1 (2013), the

juvenile’s best interests are paramount. We review a trial court’s determination as

to the best interest of the child for an abuse of discretion.” In re A.C., 247 N.C. App.

at 532-33, 786 S.E.2d at 733 (citation omitted). “Abuse of discretion results where

the court’s ruling is manifestly unsupported by reason or is so arbitrary that it could

not have been the result of a reasoned decision.” In re T.H., __ N.C. App. __, __, 832

S.E.2d 162, 164 (2019) (quoting State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523,

527 (1988)).

 - 17 -
 IN RE: I.K

 Opinion of the Court

 Pursuant to N.C. Gen. Stat. § 7B-906.1(d), the trial court held that efforts to

reunite Iliana with her parents would be unsuccessful or inconsistent with her health,

safety, and need for a safe and permanent home within a reasonable period of time.2

This conclusion rested upon its determination that “[t]he issues that lead to removal

of custody . . . have not been resolved.” Per N.C. Gen. Stat. § 7B-906.1(e), the trial

court also held that it was not possible to place Iliana with her parents within the

next six months and doing so was not in her best interest. This conclusion was based

upon its continuing concerns with the issues leading to State involvement and

respondents’ plan to continue residing in the trailer deemed inappropriate for Iliana’s

placement. For the same reasons, the trial court held that respondents demonstrated

a lack of success by not making adequate progress under the secondary plan of

reunification and acting in a manner inconsistent with the health or safety of Iliana,

pursuant to N.C. Gen. Stat. § 7B-906.2(d).

 The trial court’s ultimate findings on each of these matters find ample support

in its findings of fact discussed supra regarding the trial court’s continuing concerns

with respondents’ domestic violence, substance abuse, and inadequate housing.

These ultimate findings in turn support its conclusion that “[t]he best plan of care to

achieve a safe, permanent home for [Iliana] within a reasonable period of time is

implementation of the primary plan of guardianship to . . . [her] maternal

 2The trial court made findings of fact speaking to all the requisite criteria in N.C. Gen. Stat.
§§ 7B-906.1, -906.2. We address only those challenged by respondents.

 - 18 -
 IN RE: I.K

 Opinion of the Court

grandmother[,]” and that such placement would be in her best interest. The court’s

decision is not manifestly unsupported by reason. Therefore, the trial court did not

abuse its discretion in its permanency planning order granting guardianship of Iliana

to her grandmother.

 C. Visitation Plan

 Respondents respectively challenge the visitation plan within the Order on

separate grounds. We find no merit in either argument.

 1. Parameters of Visitation Plan

 Patty challenges the trial court’s visitation order, which limited her to “a

minimum of one hour per week of supervised visitation [with Iliana].” “This Court

reviews the trial court’s dispositional orders of visitation for an abuse of discretion.”

In re C.S.L.B., 254 N.C. App. 395, 399, 829 S.E.2d 492, 495 (2017) (internal quotation

marks and citation omitted). Patty’s arguments center on whether visitation should

be unsupervised, and she contends the trial court lacked competent evidence to order

visitation supervised by Iliana’s maternal grandmother.

 According to N.C. Gen. Stat. § 7B-905.1(c) (2019),

 If the juvenile is placed or continued in the custody or
 guardianship of a relative or other suitable person, any
 order providing for visitation shall specify the minimum
 frequency and length of the visits and whether the visits
 shall be supervised. The court may authorize additional
 visitation as agreed upon by the respondent and custodian
 or guardian.

 - 19 -
 IN RE: I.K

 Opinion of the Court

 The trial court ordered that “Respondent[s] shall have a minimum of one hour

per week of supervised visitation. The guardian has the authority and discretion to

allow additional visitation.” The trial court’s order complied with N.C. Gen. Stat. §

7B-905(c). The trial court also heard testimony that respondents’ unsupervised

visitation had previously been rescinded due to separate instances of visitation where

respondents “appeared to be under the influence.” Iliana’s guardian ad litem

recommended supervised visitation. Iliana’s therapist’s letter also described

concerns with changing the juvenile’s routine, and that current treatment involved

“the use of structure and predictability” to increase Iliana’s ability to “accept care and

feel settled and soothed by an adult caregiver as well as increasing [Iliana’s] trust in

adults to take care of her needs.” The trial court’s order for supervised visitation as

to Patty is not manifestly unsupported by reason, and the trial court did not abuse

its discretion.

 2. Notice of Right to File Motion to Review Visitation Plan

 Finally, Isaac argues that the trial court failed to provide him with notice of

his right to file a motion with the court to review the visitation plan established in

the Order, as required by N.C. Gen. Stat. § 7B-905.1(d). We find no merit in this

argument and otherwise deem any purported error harmless.

 “If the court retains jurisdiction” in its dispositional order in a permanency

planning case, “all parties shall be informed of the right to file a motion for review of

 - 20 -
 IN RE: I.K

 Opinion of the Court

any visitation plan entered pursuant to this section.” N.C. Gen. Stat. § 7B-905.1(d).

Here, in open court the trial court made the parties aware in a general sense that it

would retain continuing jurisdiction and could review any aspect of its permanency

planning order upon its own motion or that of a party: “[B]ecause [Iliana] has been

placed with her grandmother . . . if something changes at some point, the motions can

be made back to this Court if changes need to be made.” Furthermore, in its written

order the court noted that “[a]ll parties are aware that the matter may be brought

before the Court for review at any time by the filing of a motion for review or on the

Court’s own motion” and “Juvenile Court jurisdiction shall continue.”

 Assuming arguendo Isaac’s position that the trial court was required to

explicitly reference the parties’ right of review under N.C. Gen. Stat. § 7B-905.1(d),

any such error was harmless. Isaac has not pointed to any right lost or prejudiced by

the trial court’s failure to timely provide such notice. Moreover, Isaac’s mere

assignment of error on this issue indicates that he has since become aware of his right

of review under N.C. Gen. Stat. § 7B-905.1(d). We otherwise find no merit in his

argument that any purported inadequacy of the notice provided amounts to reversible

error.

 III. Conclusion

 For the foregoing reasons, we affirm the trial court’s permanency planning order.

 AFFIRMED.

 - 21 -
 IN RE: I.K

 Opinion of the Court

Judge INMAN concurs.

Judge Murphy concurs in part and dissents in part in separate opinion.

 -2-
 No. COA19-619 – In re I.K.

 MURPHY, Judge, concurring in part and dissenting in part.

 The Majority determined that clear and convincing evidence supported the

findings relevant to the trial court’s determination that Patty and Isaac acted

inconsistently with their constitutionally protected right to parent Iliana.

Specifically, the Majority held that clear and convincing evidence supported the trial

court’s findings that Patty and Isaac had failed to resolve issues with housing,

domestic violence, and drug abuse to an extent they could reunite with Iliana. I agree

that competent evidence supported the trial court’s finding that Patty had not

resolved one of those issues—drug abuse—and so would affirm the Order’s finding

and conclusion concerning Patty acting inconsistently with her constitutionally

protected right to parent Iliana. I also agree with the Majority that “the trial court’s

order for supervised visitation as to Patty is not manifestly unsupported by reason,

and the trial court did not abuse its discretion.” However, no competent evidence was

presented to the trial court as to Isaac on the issues of housing, domestic violence,

and drug abuse, and I would accordingly reverse as to Isaac. I respectfully dissent.

 ANALYSIS

A. Challenged Findings in the 22 March 2019 Permanency Planning Order

 In their separate briefs, Patty and Isaac challenged the following Findings of

Fact in the Order:

 26. Both [Patty] and [Isaac] have acted inconsistently
 with their constitutionally-protected right to parent
 [Iliana]. Specifically, this court finds as follows:
 IN RE I.K.

 Murphy, J., dissenting

 a. [Patty and Isaac] voluntarily placed [Iliana]
 with her maternal grandmother on [26] April
 [] 2016 because of [Patty]'s impending
 incarceration and [Isaac]'s lack of suitable
 housing and work schedule.
 b. [Patty and Isaac] have not obtained safe and
 stable housing appropriate for [Iliana] in the
 three (3) years [Iliana] has been out of their
 custody. Though the home in which they were
 living was found to have met minimum
 standards by RCDSS on two visits between [2]
 March [] 2017 and [5] October [] 2017, the
 home was deemed not suitable for [Iliana]
 when RCDSS visited the home in the spring
 of 2018 and again on [12 December 2018].
 c. [Patty and Isaac] continue to engage in
 domestic violence and illegal drug use despite
 their completion of treatment and classes.

27. When this hearing began on [3] January [] 2019,
 [Patty and Isaac] were still residing with [Isaac]'s
 mother in a home that Rockingham County DSS
 deemed unsuitable for the children as late as [12]
 December [] 2018.

28. [Patty and Isaac] have made some limited progress
 to remedy conditions that led to [Iliana] being
 removed from their home. However, the issues of
 substance use, domestic violence, and safe,
 substance-free housing are still present despite
 numerous services that have been offered to the
 family since the issues were first identified in 2014.
...

30. [Patty] concluded a domestic violence support group
 at the Compass Center in May 2017. [Isaac]
 completed a domestic violence perpetrator program
 at Alamance County DV Prevention in February
 2018. There has not been another identified
 domestic violence incident between [Patty and
 Isaac], however there has been domestic violence in
 the home between [Isaac] and his mother[.]

 2
 IN RE I.K.

 Murphy, J., dissenting

...

34. Despite [Isaac] earning a gross income of $46,349.00
 per year in a job he has maintained for l0 years and
 [Isaac’s mother] paying a portion of the household
 expenses, [Patty and Isaac] continue to reside with
 their infant daughter and [Isaac’s mother] with
 whom they moved after eviction in 2016 in a two-
 bedroom single wide trailer that has holes in the
 floor that were recently covered with plywood at the
 request of RCDSS, and that has not otherwise been
 maintained.
...

37. At the continuation of this hearing on [18] January
 [] 2019, [Patty and Isaac] provided photographs of
 the home that showed somewhat improved
 conditions from the conditions reflected in the
 photographs and testimony presented on [3]
 January [] 2019. [Patty] testified that the new
 photos were taken after the [3] January [] 2019
 beginning of the hearing. The court finds the
 testimony and documentation of Rockingham
 County DSS to be credible, and that the housing
 conditions of [Patty and Isaac] as of [12] December []
 2018 was not safe and appropriate for the minor
 child. Any improvements made between the
 beginning of this hearing and its conclusion are not
 indicative of the day-to-day condition of the home.
...

40. The following are relevant pursuant to N.C.G.S. §
 7B-906.1(d): . . .
 c. Efforts to reunite [Iliana] with either [Patty
 or Isaac] would be unsuccessful or
 inconsistent with [Iliana’s] health or safety
 and need for a safe, permanent home within a
 reasonable period of time. The issues that led
 to removal of custody, to wit, substance abuse,
 domestic violence, and housing, have not been
 resolved. [Iliana] has resided with her
 maternal grandmother for over half of her life.

 3
 IN RE I.K.

 Murphy, J., dissenting

 41. The Court finds, pursuant to N.C.G.S. § 7B-906.1(e),
 it is not possible for [Iliana] to be returned home or
 placed with Respondent[s] within the next six
 months. Placement with Respondent[s] is not in
 [Iliana’s] best interest. In support of this ultimate
 finding of fact, the court specifically finds the
 following3:
 ...

 b. [Patty and Isaac] have been involved
 with the Department since October
 2015 due to concerns about substance
 use, domestic violence, and unstable
 housing, and had involvement with
 Rockingham County DSS in 2014
 regarding the same issues that remain
 unresolved in 2019.
 c. [Patty and Isaac] continue to use
 marijuana despite substance abuse
 treatment. [Patty] has sought
 prescription painkillers from her
 mother on more than one occasion
 while [Iliana] has been placed out of the
 home.
 d. [Patty and Isaac] continue to reside
 with [Isaac’s mother]. This home is not
 appropriate at this time for placement
 of [Iliana].
 b. Placement with [Patty] or [Isaac] is unlikely
 within six months, and:
 i. Legal guardianship or custody with a
 relative should be established. [Patty
 and Isaac] should retain the right of
 visitation and the responsibility of
 providing financial support to [Iliana]
 by paying regular child support.
 ii. Adoption should not be pursued.
 iii. [Iliana] should remain in the current

 3The tabbing and inclusion of the first “b.,” “c.,” and “d.” before the second “b.”, etc., appears
in the Order in the Record.

 4
 IN RE I.K.

 Murphy, J., dissenting

 placement because it is meeting her
 needs and in her best interests.
 iv. Due to the history of the case and
 relationship between [respondents]
 and [the maternal grandmother], the
 guardian ad litem recommends
 guardianship to [the maternal
 grandmother] in [Iliana’s] best
 interest.
 c. Since the initial permanency planning
 hearing, OCDSS has made reasonable efforts
 to finalize [Iliana’s] permanent plans as laid
 out below.
...

43. Pursuant to N.C.G.S. § 7B-906.2(d), the following
 demonstrate a lack of success:
 a. [Patty and Isaac] are not making adequate
 progress within a reasonable period of time
 under the secondary plan of reunification.
 They have not resolved the issues of
 substance abuse and instable housing that led
 to removal of custody.
 b. [Patty and Isaac] have partially participated
 in or cooperated with the plan, the
 department, and [Iliana’s] Guardian ad
 Litem.
...

 d. [Patty and Isaac] have acted in a manner
 inconsistent with the health or safety of
 [Iliana] as set forth herein.

44. The best plan of care to achieve a safe, permanent
 home for [Iliana] within a reasonable period of time
 is implementation of the primary plan of
 guardianship to a relative, specifically to [the
 maternal grandmother].
...

57. The Court finds pursuant to N.C.G.S. § 7B-906.1(n):
 ...

 5
 IN RE I.K.

 Murphy, J., dissenting

 b. The placement is stable, and continuation of
 the placement is in her best interest.

 In their separate briefs, Patty and Isaac challenged the following Conclusions

of Law in the Order:

 2. It is in the best interest of [Iliana] that guardianship
 be granted to [the maternal grandmother].
 ...

 4. Implementation of guardianship as a permanent
 plan for [Iliana] is made within the time prescribed
 by law, is appropriate and is in [Iliana’s] best
 interest.
 ...

 6. [Patty and Isaac] have acted inconsistently with
 their protected status.

 7. [The maternal grandmother] is a fit and proper
 person to have guardianship of [Iliana] and that it is
 in the best interest of [Iliana] that guardianship be
 granted to and continued with [Iliana’s maternal
 grandmother].

 8. It is in the best interest of [Iliana] to have supervised
 visitation with [Patty and Isaac] once per week
 pursuant to the schedule that [Patty and Isaac] and
 caretaker have been following for the last several
 months.

 B. Standard of Review

 “Appellate review of a permanency planning order is limited to whether there

is competent evidence in the [R]ecord to support the findings and [whether] the

findings support the conclusions of law.” In re S.J.M., 184 N.C. App. 42, 47, 645

S.E.2d 798, 801 (2007), aff’d, 362 N.C. 230, 657 S.E.2d 354 (2008). Further, “[t]he

 6
 IN RE I.K.

 Murphy, J., dissenting

findings of fact by the trial court in a nonjury trial have the force and effect of a jury

verdict and are conclusive on appeal when supported by any competent evidence, even

if the evidence could sustain contrary findings.” In re Norris, 65 N.C. App. 269, 275,

310 S.E.2d 25, 29 (1983). “When the trial court is the trier of fact, the court is

empowered to assign weight to the evidence presented at the trial as it deems

appropriate. In this situation, the trial judge acts as both judge and jury, thus

resolving any conflicts in the evidence.” In re Oghenekevebe, 123 N.C. App. 434, 439,

473 S.E.2d 393, 397 (1996) (internal citations omitted).

 “[T]he . . . right of parents to make decisions concerning the care, custody, and

control of their children[]” is fundamental. Troxel v. Granville, 530 U.S. 57, 66, 147

L.Ed.2d 49, 57 (2000). “A natural parent’s constitutionally protected paramount

interest in the companionship, custody, care, and control of his or her child is a

counterpart of the parental responsibilities the parent has assumed and is based on

a presumption that he or she will act in the best interest of the child.” Price v.

Howard, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997) (citations omitted). “[A] natural

parent may lose his constitutionally protected right to the control of his children in

one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the

natural parent’s conduct is inconsistent with his . . . constitutionally protected

status.” In re D.M., 211 N.C. App. 382, 385, 712 S.E.2d 355, 357 (2011) (quoting

David N. v. Jason N., 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005)).

 7
 IN RE I.K.

 Murphy, J., dissenting

 We review “the trial court’s conclusions that [a parent] has acted in a manner

inconsistent with her constitutionally protected paramount status . . . de novo.” In re

A.C., 247 N.C. App. 528, 535, 786 S.E.2d 728, 735 (2016) (internal marks omitted).

“[A] trial court’s determination that a parent’s conduct is inconsistent with his or her

constitutionally protected status must be supported by clear and convincing

evidence.” Adams v. Tessener, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001). “There is

no bright line beyond which a parent’s conduct amounts to action inconsistent with

the parent’s constitutionally protected paramount status. Our Supreme Court has

emphasized the fact-sensitive nature of the inquiry, as well as the need to examine

each parent’s circumstances on a case-by-case basis.” In re A.C., 247 N.C. App. at

536, 786 S.E.2d at 735 (internal marks and citations omitted).

 “[T]o apply the best interest of the child test in a custody dispute between a

parent and a nonparent, a trial court must find that the natural parent is unfit or

that his or her conduct is inconsistent with a parent’s constitutionally protected

status.” In re B.G., 197 N.C. App. 570, 574, 677 S.E.2d 549, 552 (2009) (citations

omitted). Upon a proper finding of unfitness or actions inconsistent with the parent’s

constitutionally protected status, the trial court determines the best interest of the

child. Petersen v. Rogers, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994). When

determining the appropriate permanent plan according to N.C.G.S. § 7B-906.1, “the

trial court should consider the parents’ right to maintain their family unit, but if the

interest of the parent conflicts with the welfare of the child, the latter should prevail.

 8
 IN RE I.K.

 Murphy, J., dissenting

Thus, in this context, the child’s best interests are paramount, not the rights of the

parent.” In re T.K., 171 N.C. App. 35, 39, 613, S.E.2d 739, 741, aff’d per curiam, 360

N.C. 163, 622 S.E.2d 494 (2005) (citations and quotations omitted). “The court’s

determination of the juvenile’s best interest will not be disturbed absent a showing

of an abuse of discretion.” In re T.H., 832 S.E.2d 162, 164 (N.C. Ct. App. 2019)

(quoting In re E.M., 202 N.C. App. 761, 764, 692 S.E.2d 629, 630 (2010)); see also In

re D.S.A., 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007). “Abuse of discretion

results where the court’s ruling is manifestly unsupported by reason or is so arbitrary

that it could not have been the result of a reasoned decision.” In re T.H., 832 S.E.2d

at 164 (quoting State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

C. Findings of Inconsistent Action with Constitutionally Protected Status
 on Remand

 We vacated the 7 November 2017 Permanency Planning Order because the

trial court failed to make the required finding that respondents were unfit or had

acted inconsistently with their constitutionally protected status as parents. See In re

I.K., 260 N.C. App. 547, 550, 818 S.E.2d 359, 362 (2018). We held that, absent such

a finding, the trial court erred in reaching a best interest of the child analysis to

determine that guardianship with the maternal grandmother was in the best interest

of Iliana and Kevin. Id. Our opinion focused on the absence of a necessary finding,

Id. at 550, 555, 818 S.E.2d at 362, 365, and accordingly the bulk of my analysis in

this Dissent focuses on the trial court’s findings, and whether they were supported

by competent evidence. Patty and Isaac only appeal the Order as to Iliana, not as to

 9
 IN RE I.K.

 Murphy, J., dissenting

Kevin, and I examine the trial court’s findings and conclusions of law as to Iliana

only.

 The Order made the findings required by our opinion remanding the 7

November 2017 Permanency Planning Order. In particular, the trial court included

Finding of Fact 26 in the Order, finding that “[b]oth [Patty and Isaac] have acted

inconsistently with their constitutionally-protected right to parent the minor child.”

In support of Finding of Fact 26, the trial court made specific findings regarding

respondents’ voluntary placement of Iliana with her maternal grandmother due to

“[Patty]’s impending incarceration and [Isaac]’s lack of suitable housing and work

schedule,” the remaining absence of “safe and stable housing appropriate for [Iliana]

in the three (3) years [Iliana] has been out of [respondents’] custody,” and the

respondents’ continued acts of domestic violence and illegal drug use. My analysis

focuses on whether competent evidence was presented to the trial court on the issues

of housing, domestic violence, and drug use. The Order also concluded as a matter of

law that “[respondents] have acted inconsistently with their protected status.”

 The Order classifies its findings to comply with the requirements stated in our

7 August 2018 Order remanding the 7 November 2017 Permanency Planning Order

for further findings of unfitness or inconsistent action with respondents’

constitutionally protected status as parents. However, I note that several findings

categorized as findings of fact were, at least partially, conclusions of law. See In re

Helms, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations and

 10
 IN RE I.K.

 Murphy, J., dissenting

alterations omitted) (holding that “any determination requiring the exercise of

judgment, or the application of legal principles is more properly classified a

conclusion of law”); see also Plott v. Plott, 313 N.C. 63, 73-74, 326 S.E.2d 863, 869-70

(1985). The trial court’s classification of its own determination as a finding or

conclusion does not govern this court’s analysis. See State v. Icard, 363 N.C. 303, 308,

677 S.E.2d 822, 826 (2009); State v. Burns, 287 N.C. 102, 110, 214 S.E.2d 56, 61-62

(1975).

 Specifically, the trial court’s Findings of Fact 40(c), 41(b), and 43 in the Order

actually amount to conclusions of law, inasmuch as they declare the following:

whether “[e]fforts to reunite [Iliana] with either [Patty or Isaac] would be

unsuccessful or inconsistent with [Iliana’s] health or safety and need for a safe,

permanent home within a reasonable period of time” under N.C.G.S. § 7B-906.1(d);

that “[p]lacement with [respondents] is unlikely within six months” under N.C.G.S.

§ 7B-906.1(e); and the inadequacy of respondents’ progress, participation, and

cooperation in the reunification plan, including actions regarding “the health or

safety of [Iliana],” under N.C.G.S. § 7B-906.2(d).

 While the trial court made findings on remand to comply with the

requirements of our 7 August 2018 opinion, I treat the portions of Findings 40(c),

41(b), and 43 requiring exercise of judgment or application of legal principles as

conclusions of law and apply the appropriate de novo standard of review. See Icard,

363 N.C. at 308, 677 S.E.2d at 826 (“While we give appropriate deference to the

 11
 IN RE I.K.

 Murphy, J., dissenting

portions of [the relevant findings] that are findings of fact, we review de novo the

portions of those findings that are conclusions of law.”).

 The trial court made findings regarding respondents’ issues with housing,

domestic violence, and drug abuse, and used those findings to support its finding that

they acted inconsistently with their constitutionally protected right to parent Iliana.

The Majority addressed the issues of housing, domestic violence, and drug abuse in

that order. Accordingly, I analyze each of those issues as they relate to respondents

in the same order as the Majority.

 D. Challenged Findings of Fact

1. Housing

 On appeal, respondents challenge the trial court’s Findings of Fact 26(b), 27,

28, 34, 37, 40(c), 41(d), 43(a), and 44, which find that respondents failed to rectify

their housing situation to an extent that Iliana could return to live with them. In

particular, the trial court found the following: “the home in which [respondents] were

living . . . was deemed not suitable for [Iliana]”; the home was “deemed unsuitable for

the children”; “the issues of . . . safe . . . housing are still present”; “[respondents]

continue to reside . . . in a two-bedroom single wide trailer that has holes in the floor

that were recently covered with plywood . . . and that has not otherwise been

maintained”; “the housing conditions of [respondents] . . . was not safe and

appropriate for [Iliana]. Any improvements made between the beginning of this

hearing and its conclusion are not indicative of the day-to-day condition of the

 12
 IN RE I.K.

 Murphy, J., dissenting

home[]”; “[t]he issues that led to removal of custody, to wit, . . . housing, have not been

resolved[]”; “[respondents] continue to reside . . . [in a] home [that] is not appropriate

at this time for placement of [Iliana]”; “[respondents] are not making adequate

progress [and] . . . have not resolved the issues of . . . instable housing that led to

removal of custody[]”; and “[t]he best plan of care to achieve a safe, permanent home

for [Iliana] within a reasonable period of time is . . . to [place Iliana with] maternal

grandmother.”

 Jordan Houchins (“Houchins”), an investigator with Rockingham County Child

Protective Services, testified that, in the spring of 2018, he visited Isaac’s mother’s

home, where respondents lived, and observed clutter “piled up literally to the ceiling.”

Houchins also observed structural issues with the floors of the small trailer. When

Houchins visited the trailer again in December 2018, the same issues remained.

Isaac’s mother told Houchins a child could sleep on the pull-out couch in the living

room if Iliana lived in the trailer, as a child already lived in the trailer with her, Patty,

and Isaac. Houchins testified, consistent with the Adjudication Court Report, that

he had concern about young children living in a small trailer in that condition.

Houchins noted that a child currently resided at the trailer, but expressed concern

with another child coming to live at the trailer, in light of the trailer’s size, clutter,

condition of the floors, and Isaac’s mother’s health and mobility difficulties.

 However, competent evidence did not support the findings of fact concerning

respondents’ current housing situation. I disagree with the Majority’s analysis of this

 13
 IN RE I.K.

 Murphy, J., dissenting

issue, particularly its view that we would usurp the trial court’s role in making a

credibility determination between conflicting evidence by contravening the finding of

unsafe day-to-day housing conditions in light of the photographs provided by

respondents showing their housing situation had clearly changed. The trial court did

not merely consider evidence that, in October 2017, respondents’ housing situation

had somewhat stabilized, or that “Rockingham County DSS [] visited [Isaac’s

mother’s] home . . . and determined that it [met] minimum standards.” Importantly,

respondents provided pictures of floor reinforcements to that home at the 18 January

2019 hearing. Specifically, pictures 2, 7, 8, 10, 11, and 12 show sheets of plywood on

the floor and are evidence that respondents improved the floors of the residence to

improve the flooring problems described by Houchins. Pictures 1-9 show two

bedrooms, a dining room, and a kitchen; each space is small and cluttered, but space

is visible on the floors, beds, dresser, counter tops, table, and stove. These pictures

contradicted the trial court’s finding concerning “the day-to-day condition of the

home,” particularly that respondents resided in “housing conditions . . . not safe and

appropriate for [Iliana],” as well as the conclusions that the “extremely cluttered . . .

ho[a]rding” observed in the spring of 2018 and on 12 December 2018 and lack of space

in the trailer continued. The pictures respondents provided of floor reinforcements

at the 18 January 2019 hearing contradicted the trial court’s finding that “the day-

to-day condition of the home” continued to be unsafe, as the pictures did not show the

holes in the floor, the hoarding observed in the spring of 2018 and 12 December 2018,

 14
 IN RE I.K.

 Murphy, J., dissenting

or the continuation of a lack of space in the trailer. These pictures provided objective

proof of a change in circumstance as to respondents’ housing, making the trial court’s

finding of fact incorrect. Instead of a credibility determination weighing the

believability of contradictory evidence, the trial court’s finding regarding

respondents’ housing situation disregarded objective facts established by

photographic evidence.

 Competent evidence did not support the trial court’s findings that respondents’

housing situation continued to be unsafe and too small for Iliana, which the trial court

used to support its finding that respondents acted inconsistently with their

constitutionally protected status as parents. In light of that lack of competent

evidence to support the trial court’s findings regarding respondents’ housing, I would

set aside Findings of Fact 26(b), 27, 28, 34, 37, 40(c), 41(d), 43(a), and 44 to the extent

they find respondents had failed to rectify their housing situation to an extent that

Iliana could not return to live with them.

2. Domestic Violence

 On appeal, respondents challenge the trial court’s Findings of Fact 26(c), 28,

30, 40, 41(b), and 44, which find that respondents had failed to rectify their issues

with domestic violence to an extent that Iliana could return to live with them. In

particular, the trial court found the following: “[respondents] continue to engage in

domestic violence . . . despite their completion of treatment and classes[]”; “the issues

of . . . domestic violence . . . are still present [with respondents] despite numerous

 15
 IN RE I.K.

 Murphy, J., dissenting

services that have been offered to the family[]”; “[t]here has not been another

identified domestic violence incident between [respondents], however there has been

domestic violence in the home between [Isaac] and his mother”; “[t]he issues that led

to removal of custody, to wit, . . . domestic violence, . . . have not been resolved[]”;

“[respondents] have been involved with the Department since October 2015 due to

concerns about . . . domestic violence, . . . and . . . the same issues . . . remain

unresolved in 2019[]”; and “[t]he best plan of care to achieve a safe, permanent home

for [Iliana] within a reasonable period of time is . . . to [place Iliana with] maternal

grandmother.”

 Emily Wise (“Wise”), the DSS “assigned social worker for [Iliana,]” testified

concerning respondents’ history of domestic violence, which she also detailed in the

Adjudication Court Report. In particular, Isaac was convicted of misdemeanor

assault on a female as a result of an incident between Patty and him in October 2016.

Wise also testified, to her knowledge, no additional domestic violence incidents had

occurred between respondents since October 2016. She testified that police had been

called to a domestic disturbance at Isaac’s mother’s house on 23 August 2018. Isaac

testified that he was yelling at his mother during the incident, and Isaac’s mother

“reported it had been a family disagreement.” “There were no criminal charges

related to” the 23 August 2018 incident.

 Competent evidence did not support the trial court’s findings of fact concerning

respondents’ issues with domestic violence listed above. No known additional

 16
 IN RE I.K.

 Murphy, J., dissenting

domestic violence incidents have occurred between respondents since October 2016.

While the trial court found that domestic violence has occurred between Isaac and

his mother in the home respondents live in, the evidence in the Record does not

support that violence actually occurred. In fact, the only evidence before the court

described the incident as an argument, not as a violent or physical confrontation. I

would not speculate about the hyperbolic statements in a 911 call log that Isaac was

“‘tearing up’ the [trailer]” during this argument, particularly when no charges arose

from the incident. Further, the trial court considered evidence that Patty regularly

participated in counseling regarding domestic violence, and Isaac engaged in a

perpetrator-related domestic violence program.

 The evidence does not support the trial court’s Findings of Fact that

“[respondents] continue to engage in domestic violence,” “the issues of . . . domestic

violence . . . are still present [with respondents],” “there has been domestic violence

in the home between [Isaac] and his mother” since 2017, or that respondents’ issues

with domestic violence remain unresolved. I agree with the Majority that the trial

court’s findings regarding Patty and domestic violence were erroneous, but disagree

with its characterization of the evidence regarding Isaac and domestic violence.

Competent evidence did not support the trial court’s findings that respondents have

not resolved their issues with domestic violence, which the trial court used to support

Finding of Fact 26 that respondents acted inconsistently with their constitutionally

protected status as parents. In light of that lack of competent evidence to support the

 17
 IN RE I.K.

 Murphy, J., dissenting

trial court’s findings regarding respondents and domestic violence, I would set aside

Findings of Fact 26(c), 28, 30, 40, 41(b), and 44 to the extent they find respondents

had failed to rectify their issues with domestic violence to an extent that Iliana could

not return to live with them.

3. Drug Abuse

 On appeal, respondents challenge the trial court’s Findings of Fact 26(c), 28,

40(c), 41(b), 41(c), 43(a), and 44, which find that Patty and Isaac had failed to rectify

their issues with drug abuse to an extent that Iliana could return to live with them.

In particular, the trial court found the following: “[Patty and Isaac] continue to

engage in . . . illegal drug use despite their completion of treatment and classes[]”;

“the issues of substance use . . . and safe, substance-free housing are still present

despite numerous services that have been offered to the family”; “[t]he issues that led

to removal of custody, to wit, substance abuse . . . have not been resolved[]”; “[Patty

and Isaac] have been involved with the Department since October 2015 due to

concerns about substance use, . . . and . . . the same issues [] remain unresolved in

2019[]”; “[Patty and Isaac] continue to use marijuana despite substance abuse

treatment. [Patty] has sought prescription painkillers from her mother on more than

one occasion while [Iliana] has been placed out of the home[]”; “[Patty and Isaac] are

not making adequate progress . . . [and] have not resolved the issue[] of substance

abuse . . . that led to removal of custody[]”; and “[t]he best plan of care to achieve a

 18
 IN RE I.K.

 Murphy, J., dissenting

safe, permanent home for [Iliana] within a reasonable period of time is . . . to [place

Iliana with] maternal grandmother.”

 The trial court considered evidence that respondents completed substance

abuse treatment on 16 March 2018. Wise testified that respondents provided hair

follicles for a drug screen, and the screen of both respondents on 4 September 2018

indicated marijuana use. The trial court was also presented with evidence of Patty’s

continued drug seeking behavior after the 7 November 2017 Permanency Planning

Order.

 Wise testified that Patty had engaged in drug seeking behavior after the

appeal and remand of the 7 November 2017 Order; specifically, Patty texted “her

mother[] requesting pain medications on several occasions,” including a text message

asking “Do you have a couple of pills I can get?” on 10 June 2018, as well as a text

message on 10 August 2018 requesting pain medication. Patty’s drug seeking

behavior is supportive of the trial court’s findings of Patty’s continued drug use. Since

competent evidence supported the trial court’s findings that Patty continued to abuse

drugs, I agree with the Majority and would not set aside the challenged findings

concerning Patty’s issues with drug abuse.

 However, the Record does not contain such evidence of continued drug seeking

behavior as related to Isaac. Unlike evidence of Patty’s continued drug seeking

behavior after the appeal and remand of the 7 November 2017 Order, the only

evidence since February 2017 of Isaac participating in drug use is a hair follicle

 19
 IN RE I.K.

 Murphy, J., dissenting

sample from 4 September 2018 indicating marijuana use. The Majority also mentions

a text message exchange between respondents about marijuana on 4 April 2018, which

did not constitute the same drug seeking behavior as Patty in her text messages to

other individuals asking for drugs. The trial court was not presented with any other

evidence showing Isaac’s participation in drugs, or drug abuse, since February 2017,

other than the 4 September 2018 test. Competent evidence did not support the trial

court’s findings that Isaac continued to abuse drugs, which the trial court used to

support its finding that Isaac acted inconsistently with his constitutionally protected

status as Iliana’s parent. In light of that lack of competent evidence to support the

trial court’s findings regarding Isaac and continued drug abuse, I would set aside

findings 26(c), 28, 40(c), 41(b), 41(c), 43(a), and 44 to the extent they find Isaac had

failed to rectify his issues with drug abuse to an extent that Iliana could not return

to live with him. Additionally, to the extent Finding of Fact 26 relied on findings that

Isaac had failed to rectify his issues with housing, domestic violence, and drug abuse,

I would set aside that Finding of Fact that Isaac had acted inconsistently with his

constitutionally protected right to parent Iliana.

 E. Challenged Conclusion of Law 6

 The trial court relied on the unsupported portions of Findings of Fact 26(b),

26(c), 27, 28, 30, 34, 37, 40, 41(b), 41(c), 41(d), 43(a), and 44 regarding respondents’

housing, domestic violence, and drug abuse to support its Conclusion of Law 6 that

respondents acted inconsistently with their constitutionally protected right to parent

 20
 IN RE I.K.

 Murphy, J., dissenting

Iliana. See In re A.C., 247 N.C. App. at 535, 786 S.E.2d at 735. Specifically, I would

review whether the remaining findings of fact support Conclusion of Law 6 in light of

my previous analysis that competent evidence only supported the trial court’s

findings that Patty continued to abuse drugs. See In re A.A.S., 258 N.C. App. 422,

429, 812 S.E.2d 875, 881 (2018); see also In re A.B., 239 N.C. App. 157, 160, 768 S.E.2d

573, 575 (2015).

 Clear and convincing evidence of Patty’s continued drug seeking behavior

supported the trial court’s Conclusion of Law 6 that Patty acted inconsistently with

her constitutionally protected right to parent Iliana. Patty’s text messages to her

mother seeking drugs were clear and convincing evidence that supported Conclusion

of Law 6. However, the same conclusion does not necessarily follow for Isaac. Unlike

evidence in the Record of Patty’s continued drug seeking behavior when she texted

her mother seeking drugs, the Record only contains evidence of one instance since

February 2017 linking Isaac to participating in marijuana use, aside from his text

message exchange about marijuana with Patty.

 Evidence that respondents participated in efforts to correct the issues that led

to Iliana’s removal from their home regarding domestic violence, sobriety, and

housing stability, and maintained involvement with Iliana, does not support the trial

court’s Conclusion of Law 6. Competent evidence did not support findings that Isaac

“continue[s] to engage in . . . illegal drug use,” particularly since a marked lack of

evidence exists in the Record concerning continued drug seeking behavior by Isaac.

 21
 IN RE I.K.

 Murphy, J., dissenting

Limited marijuana usage, without more, is not conduct inconsistent with one’s

constitutionally protected parental rights. Since “[t]he clear and convincing standard

requires evidence that should fully convince,” In re A.C., 247 N.C. App. at 533, 786

S.E.2d at 734, and the Record lacks evidence that fully convinces or supports

Conclusion of Law 6, the trial court erred in concluding that Isaac acted

inconsistently with his parental rights. Finding of Fact 26 that Isaac acted

inconsistently with his parental rights is not supported by competent evidence,

should be set aside, and does not support the trial court’s Conclusion of Law 6 that

Isaac acted inconsistently with his parental rights.

 Competent evidence of Patty’s continued drug seeking behavior supported the

trial court’s findings regarding Patty’s drug abuse, including Finding of Fact 26 that

Patty acted inconsistently with her constitutionally protected right to parent Iliana.

These findings supported Conclusion of Law 6 that Patty acted inconsistently with

her constitutionally protected right to parent Iliana. Accordingly, I concur with the

Majority that we should affirm the trial court’s ruling as to Patty.

 However, the Record does not contain competent evidence supporting the trial

court’s findings that Isaac’s housing situation, domestic violence, or drug abuse

prevented Iliana from returning to live with him. In particular, Finding of Fact 26

that Isaac acted inconsistently with his constitutionally protected right to parent

Iliana was unsupported by competent evidence, and the findings did not support

Conclusion of Law 6. I acknowledge that further findings would be necessary on

 22
 IN RE I.K.

 Murphy, J., dissenting

remand concerning Iliana’s placement with Isaac, as Patty resides with Isaac and

continues to exhibit drug seeking behavior.

 CONCLUSION

 The trial court’s Finding of Fact 26 and Conclusion of Law 6 concerning Patty

acting inconsistently with her constitutionally protected right to parent the minor

child were not erroneous, as the Record contained competent evidence of Patty’s

continued drug use, and the findings concerning continued drug use supported

Conclusion of Law 6.

 However, the trial court’s Finding of Fact 26 and Conclusion of Law 6

concerning Isaac acting inconsistently with his constitutionally protected right to

parent the minor child were erroneous, as the Record did not contain competent

evidence of Isaac’s continued drug use to the extent inconsistent with his

constitutional rights to parent his child, domestic violence, or unsafe housing

conditions, and the findings did not support Conclusion of Law 6.

 The trial court did not abuse its discretion in its visitation order concerning

Patty, as the Order complied with the requirements of N.C.G.S. § 7B-905.1(c).

 Unlike the Majority, I would remand this matter for further findings

concerning Iliana’s placement with Isaac without placing her with Patty.

Accordingly, I respectfully dissent.

 23